## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

TRAVAUGHN MILLER,  as Administrator ) for the
Estate of TERRELL MILLER and  )
KEIANNA MILLER,                        )
                                       )
                    Plaintiff,         )
        v.                             )        No.:
THE CITY OF MACOMB, ILLINOIS, and      )
NICK GOC,                              )
                                       )
                    Defendants.        )

## COMPLAINT AT LAW

Plaintiffs TRAVAUGHN MILLER, as Administrator for the Estate of TERRELL

MILLER, deceased, and KEIANNA MILLER through attorney MARLEEN SUAREZ of

SUAREZ LAW P.C. complaining against Defendants THE CITY OF MACOMB, ILLINOIS,

and NICK GOC, state as follows:

### INTRODUCTION

1.    On March 16, 2024, Macomb Police Department Lt. Nic Goc and Macomb Police

Department Korri Cameron were dispatched to an apartment building located at 915 N.

Charles Street in Macomb, Illinois after multiple 911 calls were received from that

building reporting that there was a female calling for help in one of the apartments.

2.    At approximately 10:06 pm, Lt. Goc and Officer Cameron arrived at the apartment

building and were admitted to the building by an occupant who directed them to

apartment #6 on the top floor by the same occupant.

1

3.      Lt. Goc knocked on the door and announced "Macomb Police Department" twice. He was answered by a male voice that was undecipherable and a female, later identified as Plaintiff Keianna Miller, ("Keianna")  The female was yelling for help and screaming what sounds like "he's stabbing me".

4.      Lt. Goc kicked in the door at 22:12:30 and entered the apartment.  Goc's duty weapon was drawn and pointed inside the apartment.  Goc encountered the visibly distressed Keianna.  Goc ordered her verbally to "get out" and directed her with hand gestures to the door to the public hallway.  Keianna hesitates to leave and says "noooo" and points toward the bedroom hallway, but followed Goc's directions. As Keianna went by Goc on her way out of the apartment she yelled "My son's in there" which explains Keianna's hesitancy to leave the apartment.

5.      The suspect, Anthony George, emerged from a bedroom down the hallway about 15 ft. directly in front of Goc. That bedroom was located on the left side of the hallway (from Goc's perspective). George was naked and holding a knife.  George immediately went into the other bedroom on the right side of the end of the end of the hallway.  He emerged holding Keianna's son, 4 year old Terrell Miller, who was screaming in fear and confusion.  Goc starts to advance down the hallway toward the suspect and Terrell.

6.      At 22:12:49 Goc discharged his weapon one time.  The bullet hit Terrell in the head and passed through to the suspect and both were pronounced dead at the scene.

7.      Terrell was shot and killed by Lt. Goc only 19 seconds after Goc kicked the door down and entered the apartment.

8. Terrell's killing fits a pattern within Macomb Police Department that has resulted in Keianna and other Black citizens being treated with careless indifference, disrespect and lack of regard for their safety and protection. Notable examples of this callous treatment directed specifically at Keianna Miller are discussed further in this complaint. And in this case, Lt. Goc of the Macomb Police Department resorted to violence without de-escalation, without negotiation and with an unreasonably quick decision to discharge his weapon while an innocent hostage was front and center in the line of fire.

9. Terrell Miller, age 4, is dead. Keianna Miller has lost her son. Plaintiffs bring this complaint to seek redress for this unlawful conduct and the harm it has caused and to seek justice for Terrell. He was just a little boy.

## JURISDICTION AND VENUE

10. This action is brought pursuant to 42 U.S.C. § 1983 and state law to redress the deprivation under color of law of Terrell Miller's rights secured by the United States Constitution and the laws of the State of Illinois.

11. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 AND 1367.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

13. Travaughn Miller ("Plaintiff 1") is the Administrator of the Estate of Terrell Miller ("Terrell"), deceased, currently pending in Cause No. 2026-PR-15 in the Circuit Court of McDonough County, Illinois. Travaughn Miller is a resident of the State of Illinois.

14. Keianna Miiller ("Plaintiff 2" or "Keianna") is the mother of Terrell Miller and is

3

a resident of Illinois.

15.    Defendant City of Macomb ("Macomb" or "the City") is a municipal corporation organized and existing under the laws of the State of Illinois and is the county seat of McDonough County where its principal office is located. The City operates the Macomb Police Department ("MPD") which employs Defendant Nick Goc.

16.    Defendant Nic Goc ("Defendant Goc" or "Goc") is employed by the Macomb Police Department and is currently a Lieutenant. Upon information and belief, Goc was a lieutenant at the time of Terrell's death and was also acting as a training officer at that time. Defendant Goc is being sued in his individual capacity. At all times relevant, Goc was acting as a Macomb police officer with such authority under the color of law.

## FACTUAL BACKGROUND

17.    On the night of March 16, 2024, MPD dispatch received multiple 911 calls from an apartment building located at 915 N. Charles St. reporting that occupants had heard a female calling for help in a neighboring apartment.

18.    Lt. Nick Goc and Officer Korri Cameron were dispatched to the building to respond to these reports. Goc and Officer Cameron were partnered that night and patrolling in the same squad car.

19.    When Goc and Officer Cameron arrived in the area, they exited the car and were let in to the building by an unnamed occupant. This same occupant directed them to the top floor and Apartment #6.

4

20. As Goc and Officer Cameron start to climb the stairs, there are several large smears of fresh blood visible on the wall next to the stairwell.

21. Even though, they observed the blood on the wall, Goc and Officer Cameron approached the door to the apartment without urgency. They are in single file with Goc in the front and Officer Cameron behind him.

22. Goc knocked on the door twice and called out identifying them as "Macomb Police. Open the door". Muffled voices were coming from inside.

23. A male answered from inside the apartment but it is hard to decipher exactly what he is saying except for "who is it?".

24. A female could be heard screaming "he's stabbing me".

25. At that point, Goc backed up from the door and approached it quickly and with force and he kicked the door open.

26. Goc entered the apartment through the front door with his service weapon drawn and held in both of his hands in a firing position pointing straight down the hall directly in front of the entry door.

27. Plaintiff Keianna Miller was immediately visible coming down the hall toward Goc. The suspect is visible behind her taking one or two steps down the hall in the direction of the front door but retreats when he sees Goc. Keianna was visibly distressed and crying. Goc screamed at her to "get out" and removed his left hand from his weapon to motion with his hand for Miller to go out the entrance door which is now behind him.

5

28.  Keianna hesitates before leaving and moans "nooooo" as she sees the weapon in Goc's hands.  She gestures down the hall toward the bedrooms and says "My son's in there".

29.  Goc continues to gesture with his left hand for her to get out and Keianna finally does leave the apartment.

30.  Contemporaneous with the above actions, suspect George is standing at the end of the hall between the 2 bedrooms.  His right side is not visible as he is standing partly in the left bedroom and partly in the hall.   There is a knife in his left hand being held down below his waist. George is naked.

31.  Suspect George stands at the end of the hall for a few seconds, then takes one large step toward the bedroom on the right and is out of sight for about 3-4 seconds. He reemerges from the right bedroom holding Terrell in his arms in front of his body. At this time, he is shown with a knife in both hands.

32.  Terrell is held in such a way that his body is covering most of the suspects torso and neck, leaving only the suspect's limbs and head visible.

33.  George takes only 1-2 steps from the right side bedroom and Goc immediately discharges his weapon.

34.  George was not advancing down the hall toward Goc.

35.  Goc was advancing toward the suspect George.

36.  When Goc was about 5 feet away from George, Goc fired a single shot which went through Terrell's head and, upon information and belief, into suspect George's neck.

37.    Terrell falls from the suspect's arms to the floor and suspect George falls backwards in such a way that only his legs remain visible.

38.    Goc shouts "fuck" and "no, no, no" and leans over Terrell. Terrell appears unconscious. He does not attempt to render aid to Terrell.

39.    Goc then moves toward the suspect's body and looks at him. He appears to enter the bedroom and then walks around the living room.

40.    Officer Cameron immediately kneels down beside Terrell. She speaks gently to the child and says "it will be ok". She does not leave Terrell's side.

41.    There is a small amount of blood around Terrell's head and his leg moves. Terrell coughs. A large amount of blood pours out of Terrell's head and there is no further movement or sound observed in the body cam video.

42.    Both Terrell and the suspect are pronounced dead at the scene.

43.    At no time, did Goc attempt to de-escalate the situation or attempt to negotiate with the suspect in order to defuse the situation.

44.    Keianna was taken outside of the apartment building where she is sitting on a stoop and starts to question other officers at the scene.

45.    No one tells Keianna that Terrell has been shot or that he is dead. They do tell her that the suspect is dead.

46.    Keianna is transported via ambulance to the hospital for treatment of over 20 stab wounds. She would remain hospitalized for several days.

7

47.    Upon information and belief, no one from any law enforcement agency makes a death notification for Terrell to Keianna.

48.    Hours later, Keianna is finally told by a family member that Terrell is dead.

49.    In the immediate aftermath of the shooting, Defendant Goc is directed to sit in a police squad car and receives comfort from other officers.

50.    As Goc sat in the squad car, he says "I killed a baby".

51.    Todd Tedrow, a lieutenant with the Macomb Police Department, tells Goc "Your're alright, you're OK." and "We're going to take care of this."

52.    On December 18, 2024, Lt. Tedrow did exactly as he promised to Goc that "we're going to take care of this" by signing off as Chairperson of the Macomb Police Department Deadly Force Review Board investigation clearing Goc of wrong doing.

### The City's Policies, Practices and Customs Directly Caused Defendant Goc's Constitutional Violations.

53.    Macomb Police Department routinely escalate encounters with civilians, often with Black civilians.  These practices are routine and accepted within the Macomb Police Department and are tolerated with the force of law within the MPD.

54.    Plaintiff Keianna Miller has been a subject of unwarranted harassment and attention from the Macomb Police Department as follows:

a.    In 2010, Officer Lindsay May with the Macomb Police Department started to give Keianna unwarranted attention. Keianna Miller is Black.  At that time, Keianna was attending cosmetology school and did hair or baby sat for extra money.  She also lived with 3 other Black roommates in

8

Macomb. They often had get-togethers with friends on the week-ends. The get-togethers and Keianna doing odd jobs out of her home resulted in a lot of foot traffic. Keianna believes that Officer May suspected them of illegal activities and started to watch their home, even though similarly situated white neighbors did not attract police attention. Keianna noticed that officers from MPD would frequently drive by her home and were often driving unmarked cars. They would also park down the street and observe the home.

b.     Officer May pulled Keianna over in her car numerous times for petty things. Once, she was pulling out of her driveway onto the street in front of her house which is one way. He cited her for not using a turn signal when she pulled onto that one-way street. Upon discovering that her driver's license was suspended, Officer May arrested her and had her car towed.

c.     About 3 months after the incident above, a young man known to Keianna came to her house and asked about buying drugs. Keianna knew this young man did not do drugs and he admitted that Officer May sent him in as an informant. No one in the house was dealing drugs.

d.     Two weeks later, Keianna was out of town when the police raided the house and found marijuana for personal use only. Her roommates were arrested.

9

e.  From approximately July 2011 to March 2012, Keianna was pulled over numerous times by MPD police officers and had her car searched. The officers stated that they smelled weed as a pretext to search the car.

f.  In another incident, Keianna was walking with Terrell when a person known to her swerved her car toward them and attempted to hit them. Keianna later called the MPD to report the incident but it was never investigated. Later, Keianna was at a store with a friend and encountered the person who tried to hit her working there. This person told her that she should run over her and her son again. Upon information and belief, the manager of the store prepared an affidavit supporting this account of the encounter. Keianna lost her temper and knocked a bottle of disinfectant off a shelf. Macomb Police Department responded to the scene and arrested Keianna for Battery and did not take action against the person who threatened her.

g.  In a further incident, Keianna was driving and encountered an unknown MPD police officer at a 4-way stop. Keianna waved for him to go first, he waved back signaling for her to go. Keianna did proceed through the intersection first and waved to him in thanks. The MPD officer followed her for a block and then pulled her over for a suspended license. Once again, she was arrested and taken to jail. While at the jail, Keianna overheard the jailers saying her license was good and the charges should

10

be dropped.  The jailers were also kidding around with her in a friendly way about her red-dyed hair in the presence of the arresting officer.  The MPD officer said that her red hair is the reason he pulled her over because Black people are not supposed to have red hair.  After the officer left, a jailer told her to make sure that she told her lawyer that the license was not suspended.

h.   In one of her encounters with MPD Officer May violently slammed her into his police car.

i.   Officers from the Macomb police department have repeatedly asked Keianna to be an informant and she continually declined.  Officer May even came to her jail cell jail cell and entered it with a key in violation of jail policies to ask her to be an informant and that he would put money on her books.  Once again, Keianna explained that she did not have any knowledge of illegal activity and would not participate with their requests to set up her friends.

j.   In the most chilling incident, around February or March of 2019, Keianna was sober, pregnant and trying to rebuild her life.  She was walking from Taco Bell when she was approached by a man driving a white, 4x4 pick up truck with tinted windows.  It was Officer May.  He was laughing and asked if she was being good.  Keianna replied that she had not been in trouble in years and added that she was pregnant.  Officer asked if she was

11

going to have a boy or girl. She told him she was excited to be having a boy. He replied with congratulations and then said he **couldn't wait to and/or hoped to arrest her son one day**. (Emphasis added.)

k.    Officer May's comment about hoping to arrest her son one day upset Keianna greatly and she was put in fear of her and her baby's life. She had no idea how accurate that fear would become.

55.    The Democratic Women of McDonough County were investigating systemic bias in the Macomb Police Department and as part of that inquiry interviewed Keianna Miller about these and other incidents. Present at that interview were Heather McMeekan, unidentified Democratic Women of McDonough County Racial Justice Coalition interviewers, and Dr. Essie Rutledge. The interview was conducted on or about June 18, 2020 and memorialized in a written report.

56.    Keianna Miller made complaints to the Macomb Police Department about the arrest detailed in emails she sent in October 21, 2021 to then Macomb Police Department Chief Jerel Jones.

57.    Keianna Miller also made a complaint in an undated letter to Chief Jones about the incident where Officer May expressed his hope to arrest her son some day.

58.    Keianna also filed a complaint about the Macomb Police Department with the office of the Illinois Attorney General on or about June 23, 2020.

59.    Further, in an email written by then Macomb Police Department Chief Curt Barker on November 13, 2019 sent to Macomb Mayor Mike Inman, Scott Coker, an employee of

12

the City of Macomb, and David Burnham of the Macomb Police Department, Mr. Barker

mentioned Keianna Miller. This email was sent in regard to an inquiry made by a citizen

(Heather McMeekan) regarding hate crimes in Macomb. He related he had found no records of

hate crimes except for 2 complaints and that one was a "white on Black" haate crime involving

individuals arrested with ties to Keianna Miller. He then described Keianna Miller as "the lady

causing issues" at a previous Moving the Community Forward event. At that even, Keianna was

exercising her right to free speech and instead was micharacterized as "causing issues". Chief

Barker does not recount what those "issues" were.

60.     There is no evidence available that shows any of Keianna's complaints were

investigated or taken seriously, indicating the lack of regard in the Macomb Police Department

for the rights of the citizens of Macomb.

**COUNT I Violation of Civil Rights – 42 U.S.C. § 1983**
**14th Amendment Right to Protection from State-Created Danger and Substantive**
**Due Process**
**Estate of Terrell Miller as against Defendant Goc**

61.     Each paragraph of this Complaint is incorporated as if fully stated herein.

62.     Plaintiff Travaughn Miller is the duly appointed Administrator of the Estate of

Terrell Miller, deceased, having been appointed by the Circuit Court of McDonough County,

Illinois on March 11, 2026 in Cause No. 2026-PR-15.

63.     Plaintiff Travaughn Miller as Administrator for the Estate of Terrell Miller,

deceased, brings this cause of action pursuant to the provisions of 42 U.S.C. § 1983.

13

64. At all times relevant hereto, it was the duty of Defendant Goc, individually and as an officer the Macomb Police Department, to refrain from using unreasonable and excessive force and by doing so violated Terrell's right to bodily integrity.

65. Defendant Nick Goc created a danger to Terrell Miller as follows:

a. Pointing a gun at Terrell prior to shooting Terrell;

b. Shooting Terrell;

c. Shooting Terrell without lawful justification;

d. Shooting Terrell when a reasonable belief that deadly force was necessary to prevent death or great bodily harm to Terrell did not exist;

e. Discharging a weapon in such a manner as to shoot Terrell;

f. Discharging a weapon in such a manner as to shoot Terrell without justification;

g. Discharging a weapon in such a manner as to shoot Terrell in an excessive and unreasonable way;

h. Using excessive and inappropriate deadly force on Terrell;

i. Using excessive and inappropriate deadly force without justification;

j. Using excessive and inappropriate deadly force without lawful justification;

k. Failing to exercise the proper level of force that was warranted under the circumstances;

l. Failing to de-escalate;

m.    Failing to properly respond to, de-escalate, and/or defuse the situation without resorting to deadly force;

n.    Failing to take the time to properly assess the situation in order to determine if deadly force was necessary;

o.    Failing to recognize that Terrell was directly in his line of fire when he discharged his weapon;

p.    Failing to recognize the foreseeable harm to innocents when he fired his weapon;

q.    Using reckless tactics that resulted in the death of Terrell Miller;

r.    Was otherwise willful and wanton and/or negligent; and

s.    Acting with deliberate indifference to the safety of Terrell Miller.

66.    At all times relevant, Defendant Goc's conduct constituted unreasonable and excessive force in violation of the United States Constitution.

67.    Defendant Goc's actions was conscious shocking.

68.    Defendant Goc's actions were objectively unreasonable and were undertaken intentionally and with willful indifference to Terrell's constitutional rights.

69.    Defendant Goc's actions were undertaken with reckless indifference, malice, and willfullness.

70.    Defendant Goc's conduct complained of was committed while he was acting under the color of state law.

71.    As the proximate result of Defendant Goc's actions, Terrell Miller was deprived of rights, privileges or immunities secured by the U.S. Constitution or laws of the United States.

15

This deprivation of Terrell's 14th[th] Amendment rights resulted in his death.

## COUNT II
### Willful and Wanton Conduct, Wrongful Death, 740 ILCS 180/1, *et seq.*
### Estate of Terrell Miller as against Defendant Goc

72.     Each paragraph of this Complaint is incorporated as if fully restated herein.

73.     Plaintiff Travaughn Miller as Administrator for the Estate of Terrell Miller, deceased, brings this cause of action pursuant to the provisions of 740 ILCS 180/1, et seq., commonly known as the Illinois Wrongful Death Act.

74.     On March 16, 2024, and at all relevant times, Defendant Goc had a duty, in accordance with the laws of the State of Illinois, to exercise care in his interaction with Terrell, and a duty to refrain from willful and wanton conduct in his interactions with Terrell which could cause Terrell harm.

75.     At the time and place alleged herein, Defendant Goc, by and through his acts and/or omissions and as an agent, employee, and/or officer of the City of Macomb, breached his duty to Terrell by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for Terrell's health and safety, in one or more of the following respects:

    a.     Pointing a gun at Terrell prior to shooting Terrell;

    b.     Shooting Terrell;

    c.     Shooting Terrell without lawful justification;

    d.     Shooting Terrell when aa reasonable belief that deadly force was necessary to prevent death or great bodily harm to Terrell did not exist;

e.      Discharging a weapon in such a manner as to shoot Terrell;

f.      Discharging a weapon in such a manner as to shoot Terrell without

justification;

g.      Discharging a weapon in such a manner as to shoot Terrell in an excessive

and unreasonable way;

h.      Using excessive and inappropriate deadly force on Terrell;

i.      Using excessive and inappropriate deadly force without justification;

j.      Using excessive and inappropriate deadly force without lawful

justification;

k.      Failing to exercise the proper level of force that was warranted under the

circumstances;

l.      Failing to de-escalate;

m.      Failing to properly respond to, de-escalate, and/or defuse the situation

without resorting to deadly force;

n.      Failing to take the time to properly assess the situation in order to

determine if deadly force was necessary;

o.      Failing to adhere to a use of force continuum consistent with that used by

law enforcement agencies in the State of Illinois;

p.      Failing to recognize that Terrell was directly in his line of fire when he
discharged his weapon;

q.      Failing to recognize the foreseeable harm to innocents when he fired his

weapon;

17

r.    Using reckless tactics that resulted in the death of Terrell Miller;

s.    Was otherwise willful and wanton and/or negligent; and

t.    acting with deliberate indifference to the safety of Terrell Miller.

76.    As a direct and proximate result of one or more of the aforesaid intentional and/or willful and wanton and/or negligent acts and/or omissions, Terrell sustained injuries which resulted in his death on March 16, 2024.

## COUNT III
### *Respondeat Superior*
**Estate of Terrell Miller as against Defendant City of Macomb**

77.    Each paragraph of this Complaint is incorporated as if restated fully herein.

78.    At all relevant times, an employer/employee relationship existed between Defendant City of Macomb and Defendant Goc, given the latter's designation and role as a duly appointed City of Macomb and Macomb Police Department employee.

79.    At all relevant times, Defendant City of Macomb controlled or had the right to control the conduct of Defendant Goc.

80.    At all relevant times, the acts of Defendant Goc described in the claims above were committed within the scope of his employment as a duly appointed City of Macomb and Macomb Police Department employee as follows:

a.    Defendant Goc's conduct was of a kind he was employed to perform or reasonably could be said to have been contemplated as part of his employment as a duly appointed City of Macomb and Macomb Police Department employee;

18

    b.    Defendant Taylor's conduct occurred substantially within the authorized time and space limits of his employment as a duly appointed City of Macomb and Macomb Police Department employee; and

    c.    Defendant Goc's conduct was motivated, at least in part, by aa purpose to serve his employer, as a duly appointed City of Macomb and Macomb Police Department employee.

81. Defendant City of Macomb is, therefore, liable for the actions of Defendant Goc, as a duly appointed City of Macomb and Macomb Police Department employee, in accordance with the doctrine of respondeat superior.

### COUNT IV Indemnification Claim 745 ILCS 10/9-102 Estate of Terrell Miller Against Defendant City of Macomb

82. Each paragraph of this Complaint is incorporated as if restated fully herein.

83. Pursuant to Illinois statute, local public entities are empowered and directed ti pay any tort judgment for compensatory damages and may pay any associated attorney's fees and costs for which it or an employee while acting within the scope of his employment iis liable.

84. At all relevant times, Defendant Goc served as a duly appointed City of Macomb and Macomb Police Department employee and acted under the color of law and his official capacity as a sworn police officer.

85. At all relevant times, the acts of Defendant Goc described in the claims above were committed with this scope of his employment as a duly appointed City of Macomb and Macomb Police Department employee.

19

86.    Defendant City of Macomb is, therefore, liable for any tort judgment for compensatory damages in this case arising from the actions of Defendant Goc.

### COUNT V Intentional Infliction of Emotional Distress
### Plaintiff Keianna Miller as against Defendant Goc

87.    Each paragraph of this Complaint is incorporated as if restated fully herein.

88.    Defendant Goc intended to inflict emotional distress or should have known that emotional distress was the likely result of his conduct.

89.    Defendant Goc's conduct was extreme and dangerous.

90.    Defendant Goc's conduct caused severe emotional distress to Keianna Miller as described above.

### PRAYER FOR RELIEF (All Counts)

WHEREFORE, Plaintiffs respectfully request that the Court enter an order:

a.    Granting Judgement in favor of Plaintiffs and against Defendants;

b.    Awarding Plaintiffs compensatory and punitive damages in a sum to be determined by the jury at trial;

c.    Declaring that Defendants' misconduct as described herein is unlawful;

d.    Awarding Plaintiff Travaughn Miller, as Administrator of the Estate for Terrell Miller, attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

e.    Awarding Plaintiffs such additional relief, in law and/or equity. as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of twelve pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.

Respectfully submitted this
14th day of March, 2026

By:____/s/ Marleen M. Suarez_____
Marleen M. Suarez   #6293904
Attorney for Plaintiff Suarez
Law P.C.
4204 Cookson Road
Fairmont City, IL 62201
(618) 920-8375 (866) 439-
9765 FAX
suarezlawoffice@gmail.co
m

21